**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | * | |
| **OPPORTUNITY COMMISSION,** | | |
| | * | |
| Plaintiff, | | |
| | * | CIVIL ACTION NO.: |
| v. | | 1:17-cv-02860-SAG |
| | * | |
| **ENOCH PRATT FREE LIBRARY,** *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>FACTUAL BACKGROUND</u>**

Defendant Mayor and City Council of Baltimore is the Baltimore City government located in Baltimore, in the State of Maryland.  Defendant Enoch Pratt Free Library ("EPFL") operates the public library in the City of Baltimore.  EPFL has several divisions, one of which is the Neighborhood Library Services Division ("NLS").  The NLS is comprised of 21 different branches, located in various neighborhoods across Baltimore City.  NLS also has a mobile services unit, which does not have a fixed location but instead travels around the City to provide services as needed.  The Claimants in this case (Ann Marie Harvey, Linda Schwartz, Carlotta Young, Nancy Yob, and Julia Johnson) all worked as Library Supervisor Is ("LSI") within NLS.   Willie Johnson was hired as an LSI in June 2015 with a higher salary than the Claimants.

Although LSIs within NLS have "minimum requirements," the duties and responsibilities of each LSI within NLS varies, as each location has unique features.  For example, the book mobile LSI (Carlotta Young) had very limited staff.  The LSI at the Southeast Anchor Branch (Nancy Yob) is responsible for conducting trainings for new Enoch Pratt staff.  The LSI at approximately five or six branches, including Waverly (Ann Marie Harvey), have their duties eased through the

1

use Branch Friends Groups, which are comprised of local citizens who volunteer at the branch to shelve books, raise money to assist in programming, buy refreshments for programs, assist with story time, and generally assist the LSI with whatever is needed within the branch. Other branches, such as the Brooklyn Branch (Linda Schwartz), have several community volunteers who work in the branch and assist as needed. While the book mobile LSI (Carlotta Young) was responsible for hiring and supervising contractual summer outreach workers, most other LSIs do not hire part-time employees, as that function is performed by Enoch Pratt's Human Resources Department. Additionally, the book mobile LSI (Carlotta Young) has job expectations a "little outside" of what regular branch managers do, as they work on a mobile unit.

In addition, branches within NLS are different in terms of size, building square footage, and the number of staff. At some branches, like Reisterstown, there is no LSI present, but instead a Librarian Supervisor II ("LSII") manages the branch and serves in dual capacities. This differs from the Southeast Anchor branch, where the LSII has the benefit of having an LSI within the branch (Nancy Yob). Sometimes, a branch is so small that the Branch Manager is not even an LSI. That said, sometimes smaller branches do not have LSIs because of funding, and when additional funding is received, LSIs are hired to manage these small branches, even though the workload does not actually justify it. Other times, a branch with a large amount of circulation, like Roland Park (Julie Johnson), would have additional staff to assist the LSI, even though the branch itself is physically small. While most LSIs report to an LSII, some (Carlotta Young) have reported directly to the Chief of NLS in the past. The number of customer complaints received by LSIs varies from branch to branch as well. In short, the amount of foot traffic, programming, job readiness, job preparedness, computer usage, customers, and staffing vary wildly from branch to

branch.  LSIs are evaluated, in part, based on the needs of the community, which vary based on the community in which a particular branch is located.

Although LSIs may have "aspirational goals", these might differ from what they were really doing.  Similarly, the position descriptions for LSI positions are not comprehensive, and only cover some of the things that LSIs do.  The set of duties that each branch manager are expected to do may expand or contract depending on the size of the community they are serving, the demands of the library patrons, the public, the size of the building, and the size of the staff.  More is expected from certain staff and certain buildings depending on these factors.

Prior to being hired as a LSI in 2015, Willie Johnson served as a LSI from 2006 until February 5, 2014.  He left EPFL for a position with the Cecil County Public Library, which he believed provided him the opportunity to further his career.  At the Cecil County Public Library, Mr. Johnson worked as the Manager of the Elkton Branch, which was the main branch of the Cecil County Public Library system.  This position was a significant increase in responsibilities and duties, and also provided him with administration experience.  Because the Elkton Branch was the main hub of operations in the Cecil County Public Library system, it had a much larger circulation staff than existed at EPFL branches.  In his new position, Mr. Johnson was the "go-to" person in cases of emergency and when the System Manager was unavailable.  In addition, for approximately 5 – 6 months, Mr. Johnson was acting Assistant Director of the entire Cecil County Public Library system, receiving a corresponding increase in salary during the pendency of this position.  Mr. Johnson also temporarily led the Small Business Information Center ("SBIC") while that librarian was on maternity leave.  While managing the Elkton Branch, Mr. Johnson was responsible for supervising approximately 17 employees, which is approximately twice the number of employees a LSI at Enoch Pratt is responsible for supervising.  His job at Cecil County

required duties similar to those performed by the Chief of NLS (a position three levels higher than the LSI position).

Having experienced overt racism from both customers and co-workers, Mr. Johnson decided to leave the Cecil County Public Library system. Mr. Johnson eventually called Eunice Anderson, the Chief of EPFL's NLS. Mr. Johnson and Ms. Anderson spoke several times, and after the conversations with Ms. Anderson, Mr. Johnson and Enoch Pratt's Human Resources Department discussed salary requirements and engaged in negotiations concerning a potential offer. Although there was not a position open at the time of his conversations with Ms. Anderson, she was aware of pending LSI openings within NLS due to the upcoming retirements of two managers. Because Mr. Johnson was experienced, had worked previously at Enoch Pratt as an LSI, did not require training, and could assume the position of LSI immediately upon hire, Ms. Anderson moved forward with the hiring process. Through their discussions, Ms. Anderson learned about and was familiar with Mr. Johnson's duties at the Cecil County Public Library, and thus did not require or need to see any supporting documentation from Mr. Johnson concerning his qualifications.

Mr. Johnson relayed his current Cecil County salary information to Enoch Pratt, and through an email chain, negotiated a salary with Enoch Pratt's Human Resources Department. Mr. Johnson's salary negotiations were an effort to have Enoch Pratt match his current Cecil County salary. The recently enacted Baltimore City MAPS salary system (City AM 205-20) contemplated this very situation, and allowed for salary negotiations between candidates and City agencies. City AM 205-20 specifically provides flexibility for agencies to conduct such negotiations, and salary discussions between incoming candidates and City agencies were routine. Per AM 205-20, a City Agency may negotiate a starting base pay up to the mid-point of the assigned salary range. Because

4

he had been gone from City employment for over 12 months, Mr. Johnson was considered a new hire for purposes of salary. At the time of his hire, the minimum salary for the LSI job classification was $59,600.00 and the maximum salary for this position was $95,400.00. The midrange for the LSI position at the time of Mr. Johnson's hire was $77,500.00. In his negotiations, Mr. Johnson requested that EPFL match his current Cecil County salary, which was $68,135. EPFL hired Mr. Johnson as an LSI, effective June 22, 2015, at a salary of $68,900.

## ISSUES TO BE DECIDED

Plaintiff's Complaint alleges that Defendants violated the Equal Pay Act ("EPA") by paying Claimants lower wages than those paid to a male colleague for performing equal work. To succeed, Plaintiff must first establish a *prima facie* case. To do so, Plaintiff must show that Claimants receive lower pay than a male co-employee for performing work substantially equal in skill, effort, and responsibility under similar working conditions. If Plaintiff meets its burden, and establishes a *prima facie* case under the EPA, the Defendant employer is not liable if it shows that the wage differential was justified by one of four affirmative defenses listed in the statute. These affirmative defenses are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than gender.

The issues to be decided are as follows: First, do LSIs within NLS have the same core job duties? Second, was the salary given to Willie Johnson done for a factor other than gender? Third, does Plaintiff's own use of prior salary in its own hiring process estop Plaintiff from bringing this suit?

## DEFENDANTS' POSITION

First, Plaintiff cannot establish its *prima facie* case, as LSIs within NLS do not have the same core job duties. LSIs are not all universally evaluated on the same core competencies, and

are instead free to use their individual preferences to determine what they want to work on year over year. Branches within NLS differ in size, staff, neighborhood, location, circulation, technology, patrons, and foot traffic. A midsize branch like Edmondson Avenue, for example, has a Children's Librarian, Young Adult Librarian, part-time Librarian, Circulation Supervisor, two office assistants, and a Branch Manager. Forest Park has a Young Adult librarian, two reference staff, three circulation staff, and was slated to have a part-time Circulation Assistant. Hampden is considered a small branch, and has a Children's Librarian, two part-time Librarians, two full-time Circulation Assistants, and a Branch Manager. Reisterstown has an Adult Librarian, Library Associate, Children's Librarian, part-time Librarian, three Circulation Assistants, part-time Page, and a Librarian Supervisor II. Walbrook has a Children's Librarian, Young Adult Librarian, three reference staff, three full-time reference Librarians, and a Branch Manager. There is a correlation between a given branch's circulation and what an LSI does day to day, and that more staff is needed in a location that gets higher foot traffic and gets higher circulation. For example, Roland Park is a very high circulating branch, even though it is physically small. The Hampden branch is roughly the same physical size as Roland Park, but has fewer staff because it's not as busy. The working conditions for LSIs are not similar, as the branches themselves vary dramatically.

The position descriptions and generalized performance evaluations for LSIs do not accurately track the daily work of a given LSI. The evaluation tools make it harder to evaluate what a LSI is really doing on a daily basis, and instead provide only "aspirational goals" for the LSI. The LSI position description covers only some of the things relevant to the position, and the job duties of a particular LSI may "expand or detract" based on a number of factors, including the size of the community they are serving, the demands of the library patrons and the public, the size of the building, and the size of the staff. Given this, management expected more from certain staff

6

and certain buildings, and certain LSIs.  The position of LSI is highly specific to the branch in question.  LSIs do not perform identical work.  Rather, while most share similar overall duties, the granularity of their daily activities varies wildly.  In short, an LSI is not an LSI is not an LSI.

Second, Willie Johnson's salary was based on several factors, none of which was based on his gender.  His salary was based on: 1) his experience at Cecil County Public Library, 2) his salary at Cecil County Public Library, and 3) City AM 205-20 and City HR policies that allowed City Agencies to hire employees at a salary up to the mid-point of a given position's salary range.  The wage differential between Mr. Johnson and the Claimants was a disparity that was based on factors other than gender.

The following factors "other than gender" were the reasons for Mr. Johnson's hire:

- Due to the upcoming and pending retirements of two LSIs, Eunice Anderson (then-Director of NLS, which heads the division in which LSIs are located) saw an opportunity to hire Mr. Johnson as an LSI.

- Ms. Anderson's "prime objective" and "motivation" in hiring Mr. Johnson was because he was experienced, had worked previously at Enoch Pratt as an LSI, did not require training, and could assume the position of LSI immediately upon hire.

- Ms. Anderson knew from talking with Mr. Johnson prior to his hire that he was on the Leadership Team of Cecil County Public Library and had served as the Acting Assistant Director at the Cecil County Public Library.

- Mr. Johnson and Ms. Anderson talked "occasionally" well before the hire process began (Spring 2015), and he told her how much he enjoyed being part of Cecil County Public Library's leadership team.

- Ms. Anderson was aware that Mr. Johnson supervised more employees at the Cecil County Public Library than he did at Enoch Pratt and was making decisions for the library system, as opposed to the duties of an LSI within Enoch Pratt, which focuses only on a single branch.

- Ms. Anderson believed the duties that Mr. Johnson had at the Cecil County Public Library were "similar" to those performed by the Chief of the Neighborhood Library Services at Enoch Pratt, a position three levels higher than the LSI position.

- Ms. Anderson was familiar with Mr. Johnson's duties at the Cecil County Public Library, and thus did not require or need to see any supporting documentation from Mr. Johnson.

As for the salary received by Mr. Johnson, Baltimore City policy allowed for the type of salary negotiations that occurred in this case. City AM 205-20 gives City agencies discretion to negotiate a starting base pay up to the mid-point of the assigned salary range. Guidance provided by the Director of Baltimore City's Department of Human Resources explained that the salary policy gives Agencies the ability to negotiate a starting salary up to the midpoint of the range. Because Mr. Johnson was a former employee who left City employment for longer than a year, he was considered an "initial appointment," which allowed for him to negotiate a salary up the mid-range of the LSI position. At the time of his hire, the mid-range salary for the LSI position was $77,500.00. Mr. Johnson requested that Enoch Pratt match his salary at Cecil County Public Library ($68,135.00). Enoch Pratt agreed, and offered him $68,900.00.

Mr. Johnson's experience and time at Cecil County set him completely apart from Claimants. None of the Claimants have served in any library position higher than LSI, unlike Mr. Johnson. None have worked as an acting Assistant Director of an entire library system, unlike Mr. Johnson. None have led the equivalent of the Small Business Information Center, as Mr. Johnson had. None have supervised seventeen (17) employees at one time, as Mr. Johnson had. None had high level input directly into a library system, unlike Mr. Johnson. None of the Claimants in this case have ever left Enoch Pratt since their date of hire, and thus have never been subject to the salary negotiations in AM 205-20.

Third, prior salary may be considered by an employer during the hiring process. Plaintiff itself considers prior salary when it evaluates candidates for employment. It is perfectly legal to apply a gender-neutral HR policy that allows for salary negotiations and consideration of prior salaries. Consideration of Mr. Johnson's prior salary was proper, and was by no means pre-textual.

Because Plaintiff itself considers prior salary when it reviews applicants, doing so is permissible, and Plaintiff should be estopped from bringing suit.

Respectfully submitted,

_____/s/_____

Justin S. Conroy (Fed. Bar No. 28480)
Chief Solicitor
Cheryl Simpson Parker (Fed. Bar No. 26377)
Chief Solicitor
Baltimore City Law Department
100 N. Holliday Street, Suite 101
Baltimore, Maryland 21202
(410) 396-2495; (410) 396-2126 (f)
justin.conroy@baltimorecity.gov
cheryl.parker@baltimorecity.gov
*Attorneys for Defendants*